**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **IN RE:**<br><br>IES ELEVATOR GROUP CORP<br><br><br>**Debtor(s)** | **CASE NO.** 26-01519-ESL<br>**CHAPTER 11** |

# PLAN OF REORGANIZATION DATED JUNE 30, 2026

William Rivera Vélez, Esq.
**The Batista Law Group, PSC**
Capital Center Building I,
239 Ave. Arterial Hostos, Suite 206
San Juan PR 00918
(787) 620-2856

# ARTICLE I
# INTRODUCTION

This Plan of Reorganization (the "Plan") under Chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of the Debtor from: (a) cash reserves as of the date of the Order of Relief; (b) cash flows generated from the Debtor's post-petition operations; and (c) cash-flows generated from Debtor's post-confirmation operations.

This Plan provides for payment of Administrative Claims, Priority Tax Claims, One Class (1) of Secured Claims, One (1) Class of Unsecured Claims, and a Class of Equity Interest Holders. The instant case proposes to pay the unsecured creditors a distribution of $20,000.00 on their respective Allowed Claims.

All creditors and equity security holders should refer to **Articles IV** through **V** of this Plan for information regarding the precise treatment of their claim.

**Your rights may be affected by this Plan. You should read this Plan carefully and discuss it with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.**

# ARTICLE II
# BACKGROUND

## 2.01. Description and History of the Debtor's Businesses

IES Elevator Group Corp is a company dedicated to the sale, servicing, installation, and repair of all types of commercial and residential elevators. The Debtor generates income from the sale of elevators, as well as from ongoing installations, maintenance, servicing, and warranty-related work associated with such systems.

## 2.02. Insiders of the Debtor

The Debtor acknowledges that Drexyariel Velazquez Rivera, as the sole owner of the Debtor, may be considered an insider within the meaning of §101(31) of the United States Bankruptcy Code. Other than Mr. Velazquez Rivera, the Debtor is not aware of any additional insiders as defined by the Code.

## 2.03 Management of the Debtor Before and During Bankruptcy

After the effective date of the order confirming the Plan, the directors, officers, and voting trustees of the Debtor, any affiliate of the Debtor participating in a joint Plan with the Debtor, or successor of the Debtor under the Plan (collectively the "Post Confirmation Manager"), will be the Debtor itself.

### 2.04 Events Leading to Chapter 11 Filing

Debtor's filing was primarily necessitated after the termination of the Debtor's primary line of credit used for the acquisition of equipment, which caused significant complications in the Debtor's ability to continue fulfilling services and operational obligations in the ordinary course of business. Simultaneously, the Debtor experienced a decline in the number of secured projects, which further impacted the business's incoming revenue and overall cash flow. As a result of these combined circumstances, the Debtor sought relief under Chapter 11 to stabilize operations, preserve the business as a going concern, and formulate a feasible reorganization strategy for the benefit of creditors and all parties in interest.

### 2.05 Significant Events During the Bankruptcy Case

On April 1, 2026 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Subchapter V of Chapter 11 of the United States Bankruptcy Code. *See* Dkt. No. 1. Since the Petition Date, the Debtor has continued to operate its financial affairs as Debtor and Debtor in Possession pursuant to 11 U.S.C. §§ 1107 and 1184.

On April 2, 2026, the United States Trustee appointed José A. Díaz Crespo as Subchapter V Trustee, and the First Meeting of Creditors was scheduled. *See* Dkt. No. 3. The Court also entered an Order setting the Status Conference for May 26, 2026, and requiring the filing of a Pre-Status Report. *See* Dkt. No. 5.

The Debtor timely complied with its statutory duties and participated in the Initial Debtor Interview ("IDI"), and in the meeting of creditors pursuant to 11 U.S.C. § 341. *See* Dkt. No. 17. The minutes of the § 341 meeting reflect that the meeting was closed on April 28, 2026. *See supra*.

On May 12, 2026, the Debtor filed its Pre-Status Conference Report as ordered. *See* Dkt. No. 27. The Status Conference was held on May 26, 2026. During said hearing, the Court approved the Status Report and ordered the Debtor to file its Plan of Reorganization on or before June 30, 2026. *See* Dkt. No. 33.

To date, the Debtor continues to operate as Debtor in Possession, comply with its duties under the Bankruptcy Code, and engage in good-faith negotiations with creditors in furtherance of proposing a confirmable Plan of Reorganization.

### 2.06. Current and Historical Financial Conditions

The identity and book value of the estate's assets, as of the date of the filing of the Voluntary Petition, are listed in the **Amended Schedule A/B** of Debtor's bankruptcy petition. *See* Dkt. No. 20, **Amended Schedules A/B.**[1]

---

[1] Debtor expressly reserves the right to amend, supplement, or correct their bankruptcy schedules and statements at any time prior to, during, or after the confirmation hearing, as may be necessary or appropriate to reflect any updated, corrected, and without waiving any rights under applicable law or the Federal Rules of Bankruptcy Procedure.

The book value of the Debtor's assets reflects assets in the approximate amount of **$28,109.71**. *See supra*.

The Debtor's liabilities, in turn, are in the estimated amount of **$797,971.54** *See* Chart of Claims, **Exhibit A**.

## ARTICLE III
## LIQUIDATION VALUE ANALYSIS

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Plan as **Exhibit B**. The Liquidation Analysis reflects that under a hypothetical Chapter 7 Liquidation, unsecured creditors would receive an approximate distribution **0.00**. *Id.* Here, the Plan proposes a distribution of **$20,000.00** to holders of Allowed Unsecured Claims. Accordingly, this Plan provides unsecured creditors with as much under the Plan as they would receive in a hypothetical Chapter 7 liquidation.

## ARTICLE IV
## CLASSIFICATION OF CLAIMS AND INTERESTS

**4.01. Classification in General.**

**Class 1.** Class One (1) consists of the **Allowed Secured Claim**, if any, of Department of Treasury ("Hacienda"), arising from an alleged attachment recorded in the Puerto Rico Property Registry, Mayagüez Section, as allowed under § 502 of the Code. Hacienda filed Proof of Claim No. 2 ("POC No. 2") in the total amount of $39,793.90, asserting a secured portion in the amount of $9,001.07. *See* POC No. 2. The Debtor, however, does not hold any interest in real property to which Hacienda's alleged lien could attach. Accordingly, for purposes of this Plan, Hacienda shall have an Allowed Class One (1) Secured Claim in the amount of **$0.00**.

**Class 2.** Class Two (2) consists of the **Allowed General Unsecured Claims** filed and/or scheduled by the Debtor, if any, allowed under § 502 of the Code. This Class consists of the prepetition unsecured claims against the Debtor, to the extent allowed, if any. It is estimated that Allowed Class Two (2) Claims, if any, will be in the amount of **$797,971.54**. *See* **Exhibit A.**

**Class 3.** Class Three (3) consists of the Equity Interest of the Debtor in the Property of the Estate.

**4.02. Claims Objections**

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in **Article VI** of this Plan.

Unless otherwise determined by this Honorable Court, any objection to Claim will be filed on or before the 30th day following the effective date of the Plan.

**4.03. Vacant and Abstaining Classes.**

Any Class of Claims or Interests that is not occupied as of the commencement of the Confirmation Hearing by an Allowed Claim or Interest shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

**4.04. Presumed Acceptance by Non-Voting Classes.**

If a Class of Claims or Interests is eligible to vote and no Holder of Claims or Interests, as applicable, in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by the holders of such Claims or Interest in such Class.

## ARTICLE V
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

**5.01 Claims and interests shall be treated as follows under this Plan:**

*a. Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses and their proposed treatment under the Plan:

| **Type** | **Estimated Amount Owed** | **Proposed Treatment** |
|---|---|---|
| Expenses Arising in the Ordinary Course of Business After the Petition Date | Less than $500.00 | Paid in full on the effective date of the Plan, or according to terms of obligation if later. |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days **Before the Petition Date** | $0.00 | Paid in full on the effective date of the Plan, or according to terms of obligation if later. |
| Professional Fees, as approved by the Court; not paid as of the | $18,500.00 | Paid in full on the effective date of the Plan, or according to separate written agreement, or according to court order if |

| | | |
|---|---|---|
| Date Fixed for the Hearing on Confirmation. | | such fees have not been approved by the Court on the effective date of the Plan. |
| Clerk's Office Fees | $0.00 | Paid in full on the effective date of the Plan. |
| Other administrative expenses | $0.00 | Paid in full on the effective date of the Plan or according to separate written agreement. |
| Office of the U.S. Trustee Fees | $0.00 | Paid in full on the effective date of the Plan. |
| **Total** | $19,000.00 | |

*b. Priority Claims*

Priority claims under § 507 of the Bankruptcy Code include certain unsecured obligations that Congress has determined must be paid ahead of general unsecured claims. These may include, among others, income and employment taxes described in § 507(a)(8), as well as other debts entitled to priority treatment described in §§ 507(a)(1), (4), (5), (6), and (7) of the Code.

In the present case, the following claims asserting priority status have either been scheduled or filed: (a) Internal Revenue Service[2], which was scheduled as holding a priority claim in the amount of $12,926.70; (b) Hacienda, which filed Proof of Claim No. 2 in the total amount of $42,159.40, of which $21,757.90 is asserted as a priority claim; and (c) Federico Albandoz Betancourt, who filed Proof of Claim No. 9 in the total amount of $14,247.50, of which $3,800.00 is asserted as a priority claim.

If and to the extent such claims are Allowed as priority claims under § 502 of the Bankruptcy Code, they shall receive the treatment required by § 1129(a)(9)(C) of the Bankruptcy Code. Accordingly, the allowed priority portion of each such claim shall be paid in full over a period not exceeding sixty (60) months from the Petition Date, unless the holder of such Allowed Priority Claim agrees to different treatment.

*c. Classes of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. Except to the extent that a Holder of an Allowed Secured Claim agrees to a less favorable treatment, and in full and final satisfaction, settlement and release of and in exchange for its Allowed Secured Claim, each Holder of an Allowed Secured Claim shall receive the following treatment:

---

[2] The amounts reflected above correspond to the priority tax claims as scheduled by the Debtor. As of the date of this Plan, the Internal Revenue Service has not filed a Proof of Claim. The Debtor does not admit the validity, amount, or priority status of any claim that may be filed and expressly reserves the right to object to any Proof of Claim that may hereafter be filed by the Internal Revenue Service pursuant to 11 U.S.C. § 502 and the applicable Bankruptcy Rules.

| **Class** | **Description** | **Insider** | **Impairment** | **Treatment** |
|---|---|---|---|---|
| **(1)** | **Class 1.** Class One (1) consists of the Allowed Secured Claim, if any, of Hacienda, arising from an alleged attachment recorded in the Puerto Rico Property Registry, Mayagüez Section, as allowed under § 502 of the Code. Hacienda filed POC No. 2 in the total amount of $39,793.90. *See*, POC No. 2. From this total amount the amount of $9,001.07 was claimed as a secured claim. The Debtor, however, does not hold any interest in real property to which Hacienda's alleged lien could attach. Accordingly, if allowed as filed Hacienda's Allowed Class One (1) Claim, if any, will be in the amount of **$0.00.** | No | No | To the extent the claim is Allowed as filed, Hacienda shall hold an Allowed Class One (1) Secured Claim in the amount of **$0.00.** |

*d. Class of Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

In this Case, **Allowed Unsecured Claims are classified in Class Two (2).** Unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code. Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment, and in full and final satisfaction, settlement and release of and in exchange for its Claims, each Holder of an Allowed General Unsecured shall receive its Pro Rata share of the unsecured claim pool.

In regard to the **Allowed Unsecured Claims classified in Class Two (2)** each Holder of an Allowed Unsecured Claim shall receive the treatment stated therein.

In accordance therewith, the following chart identifies the Plan's proposed distribution to the Allowed General Claims against the Debtor:

| **Class** | **Description** | **Insider** | **Impairment** | **Treatment** |
|---|---|---|---|---|
| **(2)** | **Class 2.** Class Two (2) consists of the Allowed General Unsecured Claims filed and/or scheduled by the Debtor, if any, allowed under § 502 of the Code. This Class consists of the prepetition unsecured claims against the Debtor, to the extent allowed, if any. It is estimated that Allowed Class Two (2) Claims, if any, will be in the amount of **$797,971.54**. *See*, **Exhibit A.** | No | Yes | Holders of Allowed Class Two (2) General Unsecured Claims shall receive pro rata distributions in the total amount of **$20,000.00**, in full and final satisfaction of their Allowed Claims. The aggregate distributions to this Class shall not exceed **$20,000.00**, regardless of the total amount of Allowed Class Two (2) General Unsecured Claims.<br><br>The Class Two (2) distribution shall be funded through **sixty (60) equal monthly installments of $333.33 each**, commencing on the first day of the second month following the Effective Date of the Plan. |

*e. Class of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (i.e., equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and limited partners. In a limited liability company ("LLC"), the equity interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the equity interest holders.

In this Case, the **Debtor's Equity is classified in Class Three (3)**. The following chart sets forth the Plan's proposed treatment of the class of equity interest holders:

| **Class** | **Description** | **Impairment** | **Treatment** |
|---|---|---|---|
| **(3)** | **Class Three (3).** consists of the Equity Interest of the Debtor in the Property of the Estate. | No | Debtor will retain its Ownership Interest in the Property of the Estate. |

## ARTICLE VI
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

**6.01. Disputed Claim.** A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest have filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

**6.02 Delay of Distribution on a Disputed Claim.** No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

**6.03 Settlement of Disputed Claims.** The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VII
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.01 Assumed Executory Contracts and Unexpired Leases.**

(a) The Debtor shall assume the unexpired lease with AR Portal Inc. and shall reject all other executory contracts and unexpired leases, if any, listed on **Schedule G** to the Debtor's bankruptcy petition. *See* Dkt. No. 1, p. 28.

(b) The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 7.01(a) above or specifically enumerated or listed in **Schedule G,** or before the date of the order confirming this Plan, upon the effective date of this Plan.

(c) Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any.

(d) If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

(e) All executory contracts and unexpired leases that are not specifically assumed will be deemed rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

## ARTICLE VIII
## MEANS FOR IMPLEMENTATION OF THE PLAN

**8.01. Source of Payments**

Payments and distributions under the Plan will be funded by the following:

The Plan establishes that the Plan will be funded from the income generated or received by the Reorganized Debtor and the reserves held by the Debtor as of the Effective Date of the Plan. The Debtor will contribute their cash flows to fund the Plan commencing on the Effective Date of the Plan and continue to contribute through the date to Holders of Allowed Class 1 through 2 Claims, in addition to Priority Claims, receive the payments specified for in the Plan.

**8.02. Post-confirmation Management.**

The Debtor will be in charge of administering the estate notwithstanding a non-unanimously consented Plan. Upon Confirmation of the Plan, the Subchapter V Trustee shall be relieved of its responsibilities to the Estate, and the Subchapter V Trustee shall not assess any more fees or costs against the Estate after the Effective Date.

**8.03 Debtor's Ability to Make Payments under the Plan.**

The Plan Proponents believe that the Debtor will have enough cash on hand on the effective date of the Plan to pay all the claims and expenses that are entitled to be paid on that date. The Debtor estimates that, at the time of an Order of Confirmation, the Debtor will have sufficient liquid assets to fund the Plan. The source of Debtor's cash flow will come from the operation of Debtor's businesses and salaried compensation.

A table showing the projected amount of cash on hand on the effective date of the Plan, and the source of that cash is attached to this Plan as **Exhibit C.** The cash-flows projections assume that payments under the Plan will commence on **November 2026**.

Finally, the Cash Flow Projections take into account the Debtor's income derived from its business. The projections also contemplate payments for each respective class of the Plan. *See*, **Exhibit C**, Cash Flow Projections for estimated payment schedule and amount.[3]

---

[3] For the avoidance of doubt, the inclusion of projected payments to holders of claims asserting priority status under § 507 is exclusively for feasibility and illustrative purposes. The Debtor does not hereby admit the validity, amount, or priority classification of any such claim and expressly reserves all rights to object pursuant to 11 U.S.C. § 502 and applicable law. In the event any such claim is disallowed, reduced, reclassified, or otherwise modified by objection or Court order, the Plan and corresponding projections shall be deemed automatically amended to conform to such determination without the need for further modification.

**8.04 Debtor's Future Earnings or Other Future Income.**

The Debtor's future earnings are projected in the Cash Flow table attached to this Plan as **Exhibit C**.

## ARTICLE IX
## PLAN CONFIRMATION

**9.01. Plan Requirements.** The Debtor submits that this Plan complies with the content required by Section 1190 of the Bankruptcy Code. First, the Plan complies with the "Best Interest of Creditors" test set forth under Bankruptcy Code section 1129(a)(7) and is "Fair and Equitable" within the meaning of section 1191(c) of the Bankruptcy Code. Here, the Plan provides that the holders of an Allowed Claim will receive more than they would in a hypothetical chapter 7 liquidation. In addition, the Plan contemplates a distribution that is no less than the Debtor's Projected Disposable Income for the Commitment Period. Finally, Plan is feasible as the Debtor will have enough funds to be able to make the Distributions contemplated under the Plan, as required by Bankruptcy Code section 1191(c)(3)(A)(i) and (ii).

**9.02. Confirmation without Acceptance by all Impaired Classes.** Notwithstanding 11 U.S.C. 510(a), if all the applicable requirements of 11 U.S.C. 1129(a) other than paragraphs (8), (10), and (15) of that section, are met with respect to a plan, the Court, on request of the Debtor, shall confirm the plan notwithstanding the requirements of such paragraphs, if the plan does not discriminate unfairly, and has not accepted the plan. The Debtor reserves his rights to confirm using cramdown procedures set forth under 11U.S.C. 1129(b) and 1191(b).

## ARTICLE X
## GENERAL PROVISIONS

**10.01. Definitions and Rules of Construction.** The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

**10.02. Effective Date of Plan.** The effective date of this Plan is the first business day following the date that is fourteen days after the entry of the order of confirmation. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated.

**10.03. Severability.** If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**10.04. Binding Effect.** In accordance with section 1141 and 1192 of the Bankruptcy Code, the provisions of the Confirmed Plan shall bind the Debtor, the Plan Administrator, any Entity acquiring property under the Plan, and any Creditor or Interest Holder, whether or not a Final Decree has been entered closing the case.

**10.05. Captions.** The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**10.06. Controlling Effect.** Unless a rule of law or procedure is supplied by federal law (Including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the Commonwealth of Puerto Rico govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**10.07. Vesting of Property of the Estate.** Upon the Effective Date, all property and assets of the Estate of the Debtor shall automatically, without notice or order, vest in the Debtor and shall be retained by the Debtor free and clear of all claims, liens, and other encumbrances, subject to the liens on Allowed Secured Claims, if any, which are contemplated under the Plan.

**10.08. Post-petition for Transactions.** Upon the Effective Date, the Reorganized Debtor may operate their businesses and use, acquire, and dispose of its property without notice to, supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by this Plan or the Confirmation Order.

## ARTICLE XI
## DISCHARGE

**11.01. Discharge.** If the Debtor's Plan is confirmed consensually, pursuant to Section 1191(a) of the Code, upon Confirmation of this Plan the Debtor and the Released Parties will be discharged from any debt that arouse before the Confirmation of this Plan under Section 1141(d)(1)(A). The Debtor, however, will not be discharged of any debt imposed by this Plan or to the extent provided under Section 1141(d)(6).

If the Debtor's Plan is confirmed via cramdown, under Section 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments under this Plan as otherwise provided in §1192 of the Code. Accordingly, the Debtor will not be discharged from any debt: (a) on which the last payment is due after the first five (5) years of the plan, (b) excepted from discharge under § 523(a) of the Code except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

Respectfully Submitted,

**THE BATISTA LAW GROUP, PSC.**
P.O. Box 191059
San Juan, PR. 00919
Telephone: (787) 620-2856
Facsimile: (787) 777-1589

/s/ William Rivera Vélez
William Rivera Vélez, USDC No. 229408
E-mail: wrv@batistasanchez.com